IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC
2009 APR -1  A 7: 34

| | |
|---|---|
| CHANEL, INC., a New York, Corporation, | C/A 2:08-0404-PMD-BM |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| RENEE L. POWELL, an individual,<br>d/b/a WONDERFAUX HANDBAGS<br>d/b/a WONDERFAUXHANDBAGS.COM<br>d/b/a CELEBRITY SPECS<br>d/b/a CELEBRITYSPECS.COM and DOES 1-10 | |
| Defendant. | |

This action has been filed by the Plaintiff seeking monetary damages and injunctive relief for trademark violations, counterfeiting and infringement against the Defendant Powell, doing business under several cited business names and addresses. Defendant filed a pro se answer to the complaint.

The Plaintiff filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 20, 2008. As the Defendant is proceeding pro se, a Roseboro order was issued by the Court on October 22, 2008, advising Defendant of the importance of a motion for summary judgment and of the need for her to file an adequate response. Defendant was specifically advised that if she failed to respond adequately, the plaintiff's motion may be granted. After receiving an extension of time, the Defendant filed a response to the motion for summary judgment on December 15, 2008, following which Plaintiff filed a reply memorandum on January 7, 2009.

1



Plaintiff's motion is now before the Court for disposition.[1]

**Background and Evidence**

In support of summary judgment in the case, Plaintiff has submitted an Affidavit of Adrienne Sisbarro, who attests that she is the Director of Legal Administration for the Plaintiff, and that as such she is responsible, in part, for Plaintiff's trademark and anti-counterfeiting efforts in the United States. Sisbarro attests that Plaintiff has been engaged in the manufacturing, promotion, distribution, and sale in interstate commerce of high quality products under the Chanel trademarks since the 1920's and is sole owner of all rights to the federally registered trademarks as listed in her affidavit. These trademarks are in turn used in connection with the manufacture and distribution of various products (the "Chanel Marks"), with true and correct copies of the federal registrations for each of these Chanel Marks being attached to her memorandum as Exhibit B.[2] Sisbarro attests that Plaintiff has spent hundred of millions of dollars to extensively advertise and promote its goods, which are sold throughout the United States, at high quality, prestigious retail stores and via the internet.

Sisbarro attests that no other manufacturer lawfully uses the Chanel Marks or any substantially similar marks for similar goods, that the Chanel Marks have never been abandoned, and that the Plaintiff actively polices and enforces its trademark rights, as they are vital to the Plaintiff's business and represent virtually the entire value of the company and its associated image. Sisbarro

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Plaintiff has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]Sisbarro's Affidavit is itself Exhibit A.

2



further attests that Plaintiff suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time third parties sell counterfeit goods bearing identical or substantially similar trademarks.

Sisbarro attests that the Plaintiff received information that the Defendant was possibly selling handbags, wallets, sunglasses, watches, key chains and other goods under the Chanel Marks without Plaintiff's authorization via internet websites operating under the domain names Wonderfauxhandbags.com, Celebrityspecs.com, and Celebrityitbags.com via the online photo sharing website Flickr.com under the seller alias Wonderfaux Handbags and Celebrity Specs, and under the seller ID Wonderfaux Handbags via the internet auction websites iOffer.com and cheaperbytheday.com. Sisbarro attests that the Defendant does not have, nor has she ever had, the right or authority to use the Chanel Marks for any purpose.

Sisbarro attests that, as part of its ongoing investigation regarding the sale of counterfeit replica Chanel products, Plaintiff retained private investigator Robert Holmes of IPCyberCrime.com, LLC. on or about April 7, 2007 to investigate the suspected sales of counterfeit Chanel products by the Defendant. Thereafter, on or about April 23, 2007, Holmes purchased a handbag bearing one or more of the Chanel Marks at issue in this case from the Defendant via the internet website Wonderfauxhandbags.com. Holmes received this handbag on or about May 8, 2007, which was then personally inspected and analyzed by the affiant. Sisbarro attests that she determined this product to be a non-genuine Chanel product. Sisbarro attests that she then reviewed printouts reflecting the various Chanel brand of products offered for sale by the Defendant through the internet website wonderfauxhandbags.com and concluded that the products were non-genuine Chanel products. Sisbarro attests that true and correct copies of the printouts she reviewed are attached to Plaintiff's motion for summary judgment as Exhibits F, G, H, J and L. Sisbarro attests that she also

3



personally reviewed printouts reflecting various Chanel branded products offered for sale by the Defendant via the internet website cheeperbytheday.com under the seller ID Wonderfaux Handbags and through her Flickr.com photo album under the seller alias "Wonderfaux Handbags" and concluded that these products were also non-genuine Chanel products. Sisbarro attests that true and correct copies of these printouts are attached to Plaintiff's motion for summary judgment as Exhibits I and K.

Sisbarro attests that Plaintiff subsequently received information that the Defendant was possibly continuing her sales of various products under the Chanel Marks without Plaintiff's authorization through the internet website Celebrityspecs.com. Investigator Holmes verified the Defendant's ownership of that website, and on or about January 3, 2008 purchased a wallet and a pair of sunglasses bearing one or more of the Chanel Marks at issue in this matter from the Defendant via that website. Sisbarro attests that Holmes received the sunglasses and wallet bearing the Chanel Marks he purchased from the Celbrityspecs.com in January 2008, following which they were personally inspected by the affiant. Sisbarro attests that both of these products are non-genuine Chanel products. Sisbarro attests that she also personally reviewed the printouts reflecting the various Chanel brand products offered for sale by the Defendant through Celebrityspecs.com and her Flickr.com photo album under the seller alias "Celebrity Specs" and concluded that those products were non-genuine Chanel products. Sisbarro attests that true and correct copies of the printouts she reviewed are attached to Plaintiff's motion for summary judgment as Exhibits M and N.

Finally, Sisbarro attests that she subsequently received information that the Defendant was possibly continuing her sales of various products under the Chanel Marks without Plaintiff's authorization through the internet website operating under the domain name CelebrityITBags.com,

4



that she personally reviewed the printouts reflecting the various Chanel brand products offered for sale by the Defendant through that website, and concluded that those products were also non-genuine Chanel products. Sisbarro attests that true and correct copies of the printouts she reviewed are attached to Plaintiff's motion for summary judgment as Exhibit O.

Sisbarro attests that, as a result of the availability of the counterfeit products being offered by the Defendant, Plaintiff is highly likely to experience irreparable damage to its reputation among consumers unless the infringing activity alleged in the complaint is stopped. See generally, Sisbarro Affidavit, with attached Exhibits; see also Holmes Affidavit, with supporting Exhibits.

The Plaintiff has also submitted an affidavit from Lynnette Oka, who attests that she is employed as Director of Internet Administration and Enforcement for The Chanel Company Limited (TCCL), a related company of the Plaintiff. Oka attests that she is responsible, in part, for Plaintiff's trademark anti-counterfeiting effort in the United States, particularly as it relates to internet enforcement. Oka attests that as part of the Plaintiff's investigation of this matter, at various times from April 2007 through April 2008 she captured and downloaded relevant pages from the website Wonderfauxhandbags.com, cheaperbytheday.com under the seller ID Wunderfaux Handbags, and Flickr.com under the seller alias "Wonderfaux Handbagss" and "Celebrity Specs", as well as from the internet website Celebrityitbags.com, all of which are attached to the Plaintiff's motion for summary judgment as Exhibits F, G, H, J, L, N, O. Oka attests that on July 16, 2007 she sent a cease and desist letter on behalf of the Plaintiff to the Defendant via e-mail to sales@wonderfauxhandbags.com requesting that Defendant, among other things, cease all sales of products bearing counterfeit Chanel Marks. Oka attests that a true and correct copy of her July 16, 2007 cease and desist letter with a copy of the confirmation of delivery are attached to her affidavit

5



as composite Exhibit 1. Oka attests that on July 26, 2007, she received an e-mail response from the Defendant using the electronic mail address sales@wonderfauxhandbags.com advising that she had "removed the items in dispute from our website located at http://www.wonderfauxhandbags.com.". Oka attests that this e-mail response also included some of the "terms and conditions" listed on the wonderfauxhandbags.com website, which specifically acknowledges that the products offered for sale by the Defendant are not genuine or authentic. Oka attests that a true and correct copy of the Defendant's July 26, 2007 electronic mail message response is attached to her affidavit as Exhibit 2. Oka attests that, notwithstanding her e-mail and Defendant's response, the Defendant has continued to offer goods for sale under the Chanel Marks without Plaintiff's authorization. See Exhibits H, I, J, K, L, N, and O to Plaintiff's Motion for Summary Judgement. See generally Oka Affidavit, with attached exhibits.

The evidence presented also shows that on October 30, 2007, Plaintiff's counsel, Stephen Gaffigan, sent a cease and desist letter on behalf of Plaintiff to the Defendant via Federal Express, advising the Defendant that she was violating Plaintiff's rights and demanding, among other things, that she cease all sales of products bearing counterfeit Chanel Marks. See Gaffigan Affidavit, with attached Exhibit 1. Nevertheless, the evidence shows that Defendant continued to market and sell the counterfeit Chanel Mark merchandise. See Plaintiff's Exhibits D, E, L, M, N; see also Holmes Affidavit. Further, the evidence shows that, even after having been served with Plaintiff's complaint in this matter, the Defendant continued to advertise and offer for sale products bearing counterfeit Chanel Marks. See Sisbarro Affidavit, ¶¶ 25-26; Oka Affidavit, ¶¶ 16-17; Holmes Affidavit, ¶ 15; Plaintiff's Exhibit C, see also Plaintiff's Exhibits O and P.

The Plaintiff has also submitted a copy of excerpts from Defendant's deposition as

6



Exhibit C to it's motion for summary judgment. In her deposition, Defendant concedes she created the website Wonderfauxhandbags.com and Celebrityspecs.com and that she operated her business under those domain names. Defendant also concedes she received the e-mail from Oka, and responded that she had removed items based on this e-mail, or had "disabled" the items. Defendant testified that she did not recognize her response e-mail, and did not know who "Tracy" was.[3] Plaintiff also testified that she later created a new website, Celebrityitbags.com, as well as the website Alisteyewear.com. Further, by her own admission Defendant has been purging customer data fourteen days after confirmation and delivery of merchandise, and has continued to purge customer data even after the filing of this lawsuit. Id., at p. 54.

In response to Plaintiff's motion for summary judgment and the exhibits and evidence attached thereto, Defendant has not submitted any affidavits, exhibits or any other evidence in opposition to the Plaintiff's motion.[4] However, Defendant argues in her response to Plaintiff's motion that she included disclaimers on her website and that she was also lulled into a "false sense of security" because the Plaintiff waited so long to bring this lawsuit, although she acknowledges that the lawsuit was filed within the applicable statute of limitations. Plaintiff further complains that none of her suppliers have also been named as defendants in the case.

---

[3] The e-mail from sales@wonderfauxhandbags.com to Lynnette.Oka@chanelusa.com is signed "Tracy". Oka Affidavit, Exhibit 2.

[4] Defendant does reference Exhibits A, B, and C on page 2 of her response, which are represented to be a copy of the Wonderfauxhandbags.com website listing, products featured on that website, and a representation from an unnamed supplier that the merchandise "was legally acceptable designer inspired or designer alternative merchandise ("Chanel style," "inspired by Chanel," or "OEM".)". However, no such exhibits are attached to the Defendant's filing.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Here, after careful review and consideration of the arguments and evidence presented, the undersigned is constrained to agree with the Plaintiff that it is entitled to summary judgment in this case.

The evidence before the Court shows, and indeed it is undisputed, that the Defendant is the owner and operator of the websites identified in the evidence, that she had actual and constructive notice of Plaintiff's exclusive right to use the Chanel Marks at issue since at least July 2007, if not before, and that at all times relevant hereto, Defendant did not have the right or authority to use the Chanel Marks for any purpose. The evidence also clearly shows, and indeed Defendant does not deny, that she was selling products bearing the Chanel Marks, but which were in fact not actual Chanel Mark products, on her website. The evidence further reflects that Plaintiff received a cease and desist e-mail from the Plaintiff on July 16, 2007, requesting that she, among other things, cease all sales of products bearing counterfeit Chanel Marks, and that although in a response e-mail dated July 26, 2007, it was represented that the Defendant had removed the disputed items from the website Wonderfauxhandbags.com, the Defendant continued to sell counterfeit Chanel Mark items on that and other websites.



8

A Defendant is liable for trademark infringement if, without the consent of the registrant, the Defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114. In order to prove trademark infringement, the registrant must show ownership of a valid, protectable trademark, and a likelihood of confusion caused by a Defendant's use of its trademark. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 930-938 (4th Cir. 1995). The evidence clearly shows that Plaintiff owns valid, protectable trademarks which are at issue in this case. As for the likelihood of confusion, Plaintiff's evidence shows, and Defendant has submitted nothing to dispute, that its Chanel Marks have acquired meaning in the consumer market of being high quality, luxury merchandise, that they serve to identify the source of the product, and that they are entitled to protection. CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006); Ashley Furniture Industries, Inc. v. SanGiacomo N.A., Limited, 187 F.3d 363, 369 (4th Cir. 1999)[Where marks serve to identify a particular source of a product, it is deemed inherently distinctive and entitled to protection.]; see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). The similarity of the marks is also readily apparent. Compare, Plaintiff's Exhibit B [Chanel's federal registration], with Exhibit D, Holmes Affidavit, and composite Exhibits 3, 6 and 7 attached thereto, and Exhibits F-P.

There is no genuine issue of fact as to whether the use of these counterfeit marks would tend to cause confusion in the market place. Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987)["Where . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion"]; Microsoft Corp. v. CMOS Techs, Inc., 872 F.Supp. 1329, 1335-1336 (D.N.J. 1994).

9

Both Plaintiff and the Defendant also advertised through the internet for sale of their merchandise in the United States; see CareFirst of Maryland, 434 F.3d at 273 [Similarity of advertising found where the media used, the geographic areas covered, the appearance of the advertisements, and the content of the advertisements are substantially similar]; and Defendant's use of a disclaimer on her website serves to further incriminate her. Cf. Chanel, Inc. v. Gordashevsky, 558 F.Supp. 2d 532, 538 (D.N.J. 2008)[Holding that a disclaimer on websites indicating that the goods being sold are replicas implies that the Defendant had knowledge of the owner's trademarks and intended to capitalize on the value of those trademarks]. Finally, because likelihood of confusion is the standard in trademark infringement cases, courts do not need to find evidence of actual confusion. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). Therefore, the evidence before the Court clearly establishes that the Defendant is liable for trademark infringement and counterfeiting as a matter of law in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

Finally, Plaintiff also asserts a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which affords protection against a wide variety of unfair competition, including infringement of unregistered marks. Two Pesos, Inc., 505 U.S. at 767-768. Based on the evidence and findings already discussed herein, supra, Plaintiff has also established a violation of this Act. LoneStar, 43 F.3d at 930 ["In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers"].

## Conclusion

Based on the foregoing, it is recommended that the Plaintiff's motion for summary

10



judgment be **granted,** and that the Court enter a preliminary and permanent injunction enjoining the Defendant, her agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, imported, advertised or promoted, distributing, selling or offering to sell her or their counterfeit goods; from infringing, counterfeiting, or diluting the Chanel Marks; from using the Chanel Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress which may be calculated to falsely advertise the services or products of the Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with the Plaintiff; from falsely representing herself or her businesses and/or websites from being connected with the Plaintiff, through sponsorships or association, or engaging in any act which is likely to falsely cause members of the trade and/or the purchasing public to believe any goods or services of the Defendant, are in any way endorsed by, approved by, and/or associated with the Plaintiff; from using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by the Defendant, including, without limitation, costume jewelry and accessories, namely, handbags, wallets, sunglasses, key chains, and watches, and other goods; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods as being those of the Plaintiff, or in any way endorsed by the Plaintiff and from offering such goods in commerce; and from otherwise unfairly competing with the Plaintiff.

       It is further recommended that Plaintiff be awarded an amount of monetary damages, to include costs and reasonable attorneys fees associated with bringing this action, in an amount to



be determined in an evidentiary hearing before this Court. See 15 U.S.C. § 1117(a)(b)(c).[5]

The parties are referred to the important notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

March 31, 2009

Charleston, South Carolina

---

[5] In its motion for summary judgment, Plaintiff requests a total statutory damage award of $225,000.00, together with $12,937.50 in attorney's fees, $1,987.00 in investigative charges, and other costs in an amount of $425.00, for a total award of $240,349.50. However, in light of Defendant's pro se status, the undersigned believes that a hearing should be held to set the amount of any final monetary award in order to afford the Defendant an opportunity to contest the amount to be awarded the Plaintiff.

12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

13

